[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On October 12, 1993, the plaintiff, William H. Honan, filed a revised complaint alleging various causes of action CT Page 1929 arising out of an ex parte attachment of real property located in Redding, Connecticut.
Counts one through five are against the defendant law firm of Pinney, Payne, VanLenten, Burrell, Wolfe Dillman ("Pinney"). In count one, the plaintiff alleges that on or about August 23, 1988, defendant, Richard A. O'Connor, an attorney employed by Pinney, applied for an ex parte attachment of real property on behalf of clients, Gary R. Michael and Dennis N. Michael. Plaintiff allegedly has an ownership interest in the real properly [property], located at 147 Cross Highway in Redding, Connecticut.[1]
According to the plaintiff, the application, which was granted by the court on August 23, 1988 (Flynn, J.), did not inform the court of plaintiff's ownership interests in the subject property, therefore, the plaintiff did not receive notice of the attachment. The plaintiff alleges that he has suffered financial loss in addition to physical and emotional pain and suffering.
In the second count, the plaintiff incorporates the first count and further alleges that Pinney's conduct violates the Connecticut Unfair Trade Practices Act ("CUTPA").
In the third count, the plaintiff alleges that the statute under which Pinney obtained the ex parte attachment of plaintiff's property, Connecticut General Statutes 52-278a et seq., and 52-279 et seq. violates the due process guarantees of both the United States constitution and the Connecticut constitution. The plaintiff also alleges that the statutes, both on their face and as applied to the plaintiff, are unconstitutional.
In the fourth count, the plaintiff alleges that Pinney's conduct constitutes an abuse of process.
In the fifth count, the plaintiff alleges that Pinney, in both the application for prejudgment remedy and the attached affidavits, knowingly, and wilfully made false representations to the court, and that this conduct constitutes a fraud upon the court.
These five counts are also brought against O'Connor and against O'Connor's clients, Gary R. Michael and Dennis N. CT Page 1930 Michael.
On October 14, 1993, Pinney and O'Connor (hereinafter "defendants") filed a motion to strike all counts addressed against them on the ground of legal insufficiency.[2]
The defendants filed a memorandum of law in support of their motion. On October 27, 1993, the plaintiff filed an opposition memorandum. On October 29, 1993, the plaintiff filed a supplemental objection to the defendants' motion.
The purpose of the motion to strike is to challenge the legal sufficiency of the allegations of any complaint. Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 170,544 A.2d 1185 (1988). In judging the motion, it does not matter whether the party can prove the allegations at trial. Levine v. Bess and Paul Sigel Hebrew Academy of Greater Hartford, Inc., 39 Conn. Sup. 129, 131, 471 A.2d 679 (Super.Ct., 1983). The motion admits all facts well pleaded, but does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings. Mingachos v. CBS, Inc., 196 Conn. 91, 108,491 A.2d 368 (1985). The sole inquiry is whether the plaintiff's allegations, if proved, state a cause of action. Id.
Count One
In the first count, the plaintiff alleges an action in wrongful attachment. The defendants are moving to strike these counts because they are legally insufficient.
In their supporting memorandum, defendants initially argue General Statutes 47-14f, permits the attachment of the interest which one joint tenant has in real property. Defendants further argue that the defendant has suffered no loss as a result of an attachment of the interest of his wife, and if judgment is rendered against his wife in the case of Michael v. Burton, the plaintiff would still enjoy an ownership interest in the property as a tenant in common with the Michaels.
Defendants further argue that the plaintiff does not allege that his interest has been attached, but only that property in which he has an ownership interest has been attached. Therefore, defendants argue that the plaintiff has CT Page 1931 not been injured.
Defendants finally argue that there is no statutory requirement mandating that notice be given of a prejudgment attachment to co-tenants whose interest has not been attached. In addition, defendants argue that General Statutes 52-178e does not require that an applicant for a prejudgment remedy disclose the ownership interest of all persons who may claim an interest in the real property.
Conversely, plaintiff argues in his opposition memorandum that he has explicitly alleged that he has suffered injury as a direct result of the attachment. Plaintiff further argues that the injury alleged can be proved at trial through denials to refinancing requests and inflated interest rate charges on his mortgage that were a direct result of the wrongful attachment.
"In ruling on a motion to strike, the court is limited to the facts alleged in the complaint." Gordon v. Bridgeport Housing Authority, supra, 170. "A motion to strike which imparts facts from outside the pleadings is an improper speaking motion to strike." Connecticut State Oil Co. v. Carbone, 36 Conn. Sup. 181, 182-83, 415 A.2d 771 (Super.Ct. 1979). The defendants seek to impart facts from outside the pleadings, i.e., whose ownership interest was actually attached. In addition to being a "speaking" motion, the defendants' motion to strike count one of the plaintiff's revised complaint is denied because the motion to strike improperly addresses the merits of the case. See Grubb Ellis Co. v. Denardo, 2 Conn. L. Rptr. 304 (August 30, 1990, Jones, J.).
Count Two
In count two the plaintiff alleges a violation of CUTPA, General Statute 42-110b.
General Statutes 42-110b(a) provides:
"No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."
Connecticut courts have employed the "cigarette rule" in CT Page 1932 determining whether a practice violates CUTPA. The criteria for the rule has been stated as:
 `(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)].'
Dadonna v. Liberty Mobile Home Sales; Inc., 209 Conn. 243,254, 550 A.2d 1061 (1988).
In their supporting memoranda, defendants argue that as pleaded, their alleged actions are not unfair or deceptive. Defendants further argue that even if the act of attaching property was to be construed as unfair or deceptive, the second count should still be stricken as it alleges a single isolated instance of conduct as compared to alleging unfair methods or deceptive acts or practices pursuant to 42-110b(a).
Defendants further argue that an attorney's conduct in following the statutory requirements of 52-278e cannot be found to be immoral, unethical, oppressive or unscrupulous.
Plaintiff argues that because he has incorporated the first count which alleges wrongful attachment, and because an attachment wrongfully obtained without cause is unlawful, immoral, unscrupulous, unethical and oppressive, he has sufficiently pleaded a violation of CUTPA. In addition, plaintiff cites several Superior Court decisions which have held that an allegation of a single transaction is sufficient to state a CUTPA violation.
In the second count of his revised complaint, plaintiff incorporates the first count, and alleges "[t]he [d]efendants conduct constitutes on unfair and deceptive trade practice which violates the Connecticut Unfair Trade Practice Act."
(Second count, plaintiff's second revised complaint, para 7, dated October 12, 1993.) CT Page 1933
The court concludes that the plaintiff has not set forth facts in his complaint to support the allegation that the defendants, by attaching property via a prejudgment attachment, have violated CUTPA. Plaintiff simply alleges in the second count that the defendants' actions violate CUTPA. Since a motion to strike does not admit legal conclusions, Blancato v. Feldspar Corporation, 203 Conn. 34, 37,522 A.2d 1235 (1987), defendants' motion to strike the second count of the plaintiff's revised complaint should be, and is hereby granted because it is legally insufficient.
Count Three
In count three, the plaintiff alleges that General Statutes 52-278e is unconstitutional as applied to the plaintiff.
General Statutes 52-278e(a) provides, in part:
 The court or a judge of the court may allow the prejudgment remedy to be issued by an attorney without hearing as provided in sections 52-278c and 52-278d upon the filing of an affidavit sworn to by the plaintiff or any competent affiant setting forth a statement of facts sufficient to show that there is probable cause to sustain the validity of the plaintiff's claim and (1) the prejudgment remedy requested is for an attachment of real property. . . .
In their supporting memorandum, defendants argue that the United States Supreme Court, in Connecticut v. Doehr, 500 U.S. _____, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991) held that the prejudgment remedy provision contained in 52-278e was unconstitutional. However, the defendants contend that the unconstitutionality of the statute would have prospective effect only and is, therefore, applicable only to attachments filed after March 9, 1990. See Pinsky v. Duncan, 907 F.2d 17
(2d Cir. 1990). Defendants argue that the application and the subsequent granting of the prejudgment remedy occurred in 1988 and, therefore, prejudgment attachment is valid.
In opposition, plaintiff argues that having received no notice of the attachment, he was denied due process. See CT Page 1934 Connecticut v. Doehr, supra.
In Klein v. Willocks, 5 Conn. L. Rptr. 316 (December 2, 1991, Katz, J.), the plaintiff claimed that an ex parte attachment order issued on October 2, 1989, was unconstitutional. The plaintiff based his claim on Pinsky v. Duncan, 898 F.2d 852 (2d Cir. 1990) ("Pinsky I"). In addressing the propriety of the plaintiff's motion to vacate the prejudgment attachment, the court in Klein stated:
 Pinsky I was appealed, under the name of Connecticut v. Doehr. [Citation omitted.] The Supreme Court affirmed the decision of the court of appeals in Pinsky I, stating that `because Connecticut prejudgment remedy provision [C.G] 52-278e(a) (1), violates the requirements of due process by authorizing prejudgment attachment without prior notice or a hearing, the judgment of the Court of Appeals is affirmed . . .' [citation omitted]. However, what the parties involved herein fail to mention is Pinsky v. Duncan, 907 F.2d 17 (2d Cir. 1990) (Pinsky II). In a decision on petitions for rehearing of the Pinsky I decision, the Court of Appeals granted the appeal `only insofar as we amend our prior opinion to hold that . . . our declaration of the unconstitutionality of General Statutes 52-278e(a)(1) shall have prospective effect only, i.e. shall be applicable only to attachments filed after March 9, 1990.'
(Citation omitted.) Id. The plaintiff's motion in Klein was, accordingly, denied. See also Bristol Shop. Plaza v. Viligant, Judicial District of Hartford/New Britain at Hartford, No. 338958 (September 1, 1992, Schaller, J.); Johnson v. Olcese, 5 Conn. L. Rptr. 68 (October 2, 1991, Pickett, J.); Soden v. Johnson, 1 Conn. L. Rptr. 402 (March 26, 1990, Cioffi, J.), New England Redemption v. Silver Realty Partnership, 2 Conn. L. Rptr. 216 (August 1, 1990).
Since the U.S. Supreme Court's decision ruling General Statutes 52-278e as unconstitutional is not retroactive, it cannot invalidate an ex parte attachment executed prior to March 9, 1990. Because the attachment in this case occurred in 1988, the defendants' motion to strike the third count of the revised complaint is granted because it is legally CT Page 1935 insufficient.
Count Four
Plaintiff alleges in the fourth count an action for abuse of process.
"An action for abuse of process lies against any person using `a legal process against another in an improper manner or to accomplish a purpose for which it was not designed.'" Mozzochi v. Beck, 204 Conn. 490, 494, 529 A.2d 171 (1987), quoting Varga v. Pareles, 137 Conn. 663, 667, 81 A.2d 112
(1951).
In their supporting memorandum, defendants argue that since they did not employ legal process against the plaintiff, but only against plaintiff's wife, there can be no action for abuse of process. In addition, defendants argue that the plaintiff has not pleaded a proper claim for abuse of process.
Plaintiff counters that the attachment was issued without probable cause which constitutes an abuse of process. In addition, plaintiff alleges that defendants real intention in attaching the real property of the plaintiff "was to drive a wedge between Mr. Honan and his wife and promote family discord and family economic hardship. "
 The purpose of the prejudgment remedy of attachment is `security for the satisfaction of the plaintiff's judgment, should he obtain one.' [Citations omitted.] The trial court found that the plaintiff used the attachment for the sole purpose of securing payment of the indebtedness it claimed. There was no evidence or finding by the court that the attachment was misused or misapplied . . . . Since the prejudgment remedy was used for its proper purpose, the plaintiff did not abuse the use of this process.
Lewis Truck Trailer, Inc. v. Jandreau, 11 Conn. App. 168,170, 526 A.2d 532 (1987).
The court in Lewis also stated:
`Abuse of process differs from malicious CT Page 1936 prosecution in that the gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish. The purpose for which the process is used, once it is issued, is the only thing of importance. Consequently, in an action for abuse of process it is unnecessary for the plaintiff to prove that the proceeding has terminated in his favor, or that the process was obtained without probable cause or in the course of a proceeding begun without probable cause.'
(Footnotes omitted.) Id., 170-71, quoting W. Prosser W. Keeton, Torts (5th Ed. 1984) 121, p. 897.
In the present case, the plaintiff, in count four against both defendants, incorporates the first count which alleges wrongful attachment and further alleges that:
 [t]he [d]efendant's conduct is and has been outrageous insofar as it wilfully acted to deprive the [p]laintiff of his rights of due process without any basis in law or fact for an improper purpose, to wit: to cause substantial harm to himself and to his family. Such conduct constitutes an abuse of process.
(Fourth count, plaintiff's second revised complaint, paragraphs 7 8, dated October 12, 1993.)
Nowhere has the plaintiff alleged that the defendants have misused or misapplied the process of applying for a prejudgment attachment to achieve an end other than that which it was designed to accomplish. Furthermore, plaintiff's contention that the attachment being issued without probable cause constitutes an abuse of process, is unavailing. See Lewis Truck Trailer, Inc. v. Jandreau, supra.
Since the plaintiff has not pleaded that the prejudgment remedy secured by the defendant was used for an improper purpose, the plaintiff cannot maintain an action for abuse of process. Therefore, the defendants' motion to strike count four of the plaintiff's revised complaint is granted because CT Page 1937 it is legally insufficient.
Count Five
Plaintiff alleges in the fifth count a fraud upon the court.
The defendants argue in their supporting memorandum that in the area of fraud, the conduct of the defendants in this particular case is governed by Rule 3.3 of the Rules of Professional Conduct. Defendants argue that if they committed the acts alleged in the fifth count, they may be in violation of Rule 3.3[.] However, defendants further argue that a violation of the Rules of Professional Conduct does not give rise to a private cause of action, and have submitted case law to support their position. Defendants argue that since no cause of action accrues to a private party from a violation of the Rules of Professional Conduct, the plaintiff's claim of fraud as contained in the fifth count must be stricken.
Conversely, plaintiff argues that the essence of the fifth count which alleges fraud is not that the defendants violated the Rules of Professional Conduct, but that the defendants abused the judicial process in a manner which deeply offends both the process and the plaintiff.
Plaintiff has not stated a cause of action upon which he can recover. Further, any redress of these claims is better left to the court or the grievance procedures available to the parties. Accordingly, the defendants' motion to strike the fifth count is granted.
Mihalakos, J.